## No. 12,858.

### STATE OF LOUISIANA VS. PROSPER RENAUD.

A letter written by a prisoner while in jail, and without being closed or sealed and handed to another prisoner to be sealed and mailed to a witness of the writer, is competent evidence against the accused, notwithstanding same may have been surreptitiously read by the person to whom it had been entrusted, and thereafter handed to a deputy sheriff, instead of being mailed.

That proceeding can not be classed as an unreasonable search and seizure in a constitutional sense.

A single declaration uttered during the progress of the trial by the father of the deceased, apparently hostile to the accused, and which was at once repressed by the judge, can not be viewed as having unduly influenced the verdict of the jury against the accused.

APPEAL from the Twentieth Judicial District Court for the Parish of Ascension. *Guion, J.*

---

*M. J. Cunningham,* Attorney General, and *G. A. Gondran,* District Attorney, for Plaintiff, Appellee.

---

*R. McCulloh* for Defendant, Appellant.

---

Argued and submitted June 13, 1898.
Opinion handed down June 21, 1898.

---

### ON MOTION TO DISMISS APPEAL.

The opinion of the court was delivered by

WATKINS, J. The ground of the motion is, that the transcript of appeal was not filed within ten days after the order of appeal was granted; and under the law, it was out of time when filed.

That upon the 4th of June, 1898, the appellant filed a motion for the extension of the return day of the appeal, and obtained an order extending same; and that said order was unavailing because the time within which the appeal could have been filed, and within which the return day could have been legally extended, had already elapsed.

The record discloses, that the order of appeal was granted on the 20th of May, 1898, and the transcript was only filed on the seventh day of June following.

The clerk of the District Court prepared and caused to be filed in this court, a certificate in which the fact is stated that " he was delayed in the preparation of the transcript by a search necessitated by the absence from the record of the letter filed and made part and portion of a bill of exceptions, reserved by defendant; and by a stress of other business, so he could not prepare the transcript until after the lapse of the legal delays for its filing in the Supreme Court."

This certificate has not been traversed, and it clearly shows that it was not the fault of the appellant that the appeal was not filed in due time; but that of the clerk, if of any one.

But the statement of the clerk is that for good and sufficient reasons he was unable to prepare the transcript in time.

True it is that the appellant might have filed his motion for an extension of time within the ten days allowed for bringing up the appeal, but owing to the particular cause assigned by the clerk, it is not apparent that the defendant or his counsel was aware that the transcript would not be ready in time.

State vs. Bevell, 47 An. 48, is in point.

The motion to dismiss is denied.


ON THE MERITS.

The defendant was indicted for the crime of murder, found guilty by a verdict of the jury, and sentenced to the extreme penalty of the law; and from that sentence and judgment he prosecutes this appeal.

I.

The first bill of exceptions which attracts attention is one relating to the introduction in evidence by the State, of a letter written by the defendant to one Marcellin Renaud, while he was in jail, and

State vs. Renaud.

delivered to a "trusty" thereto attached, for the purpose of mailing it to him.

The bill of exception relates, that the "trusty" to whom he delivered the aforesaid letter, handed same to the deputy sheriff instead of mailing it; and that was done without his knowledge or consent—said "trusty" having first read same.

That the deputy sheriff retained possession of said letter for the purpose of using it in evidence against the defendant on the trial.

That counsel for the defendant objected to the admission of that letter in evidence on the ground "that no man can be compelled to give evidence against himself, and that the illegal taking of said letter by the said officers of the law, and the introduction thereof in evidence, was a violation of the constitutional provisions of the United States guaranteeing a citizen against the unreasonable search and seizure of his property and papers and against being compelled to give evidence against himself."

The said objection having been overruled, he retained a bill of exceptions.

The trial judge assigns as his reasons for overruling said objection, that the letter was written on a piece of paper which was furnished to the defendant by another one of the prisoners in the jail who was a kind of "trusty," and that when the defendant had written same he handed it to him and requested him "to enclose same in an envelope and mail it."

That after he had obtained possession of the letter thus written, the "trusty" read it, and then gave it to the jailer, who is deputy sheriff, and he delivered it to the District Attorney.

"There was no force, violence or compulsion used in getting possession of the letter referred to, which was delivered by the accused voluntarily to the prisoner in jail, who gave it to the jailer, and, therefore, in my opinion, no unlawful seizure was resorted to as contemplated by the law prohibiting the seizure of a person's papers."

It seems to us that the judge's opinion and ruling were correct on the plainest principles of reason and logic.

On the evidence adduced it seems perfectly plain that the defendant voluntarily parted with the letter he had designed for his friend. That it was indited on a scrap of paper and was neither placed in an envelope nor sealed. That the trusty violated the defendant's con-

fidence by reading it and placing it in the possession of an officer of the law, who proposed to put it in evidence against .him.    That was simply the misfortune of the defendant, who was over-confident of the trustworthiness of his messenger.

. There was surely nothing unlawful in this; and being unlawfully or wrongfully obtained would not render the letter inadmissible in evidence.

The letter was properly admissible in evidence as an admission of the accused; and same was not legally subject to the objection that its admission in evidence was the just equivalent of compelling the accused to testify against him self.    The writing of the letter was voluntary, and its contents stand for themselves as an admission of the facts therein contained.

We think the judge's ruling correct.

## II.

The second bill of exceptions relates to the refusal of the judge to grant a new trial.

The ground of the motion for new trial is, that during the trial "there was much feeling in the court house among the bystanders, who were in large numbers; and that the jury must have been and were influenced by said feeling," etc.

In addition to this statement, the motion makes mention of the circumstance of the letter and its alleged seizure and introduction in evidence against him, over his protest and objection.

The statement is also made, "that while the District Attorney was arguing the case to the jury the feeling in the court house found expression by a person saying aloud, so that all in the court house heard him, "Put a rope on him," etc, and that such expressions "must have, and did affect the verdict of the jury," etc.

The statement of the judge for refusing to grant the rehearing is as follows, viz.:

"That no evidence was introduced, nor was any evidence offered on the trial of the motion.

"It is true that the father of W. P. Rochelle, Jr., who, it is alleged, was killed and murdered by the accused, was in court during the time that the case was being argued by the District Attorney to the jury, who, while speaking and appealing to the jury to find a verdict of guilty, remarked: 'What will you do with the accused?'

or words to that effect, exclaimed in the audience 'Put a rope around his neck!' "

The judge's statement is that " no other person made any remark, nor was any demonstration made;" and that he at once took the necessary steps to prevent a repetition of any such remark in court.

He further states that said observation was made in an undertone, though he heard it, and presumes the jury heard it also.

But he further states that he is " satisfied, however, that nothing was said or done sufficient to affect or influence the verdict of the jury."

The foregoing recital of the facts is quite sufficient to carry conviction to any unbiased mind that nothing occurred within the presence and hearing of the jury, except the single spontaneous declaration of the father of the deceased, which even tended to influence the verdict of the jury; and it is evident that whatever effect same may possibly have had was speedily overcome by the repressive measures which were instantly resorted to by the judge.

Fairly considered, we think it could not have exercised any influence upon the minds of the jury which was prejudicial to the accused.

We are of opinion that no error is exhibited by the record which entitles the accused to relief at our hands.

Judgment affirmed.