29259.  PIERCE *v.* THE STATE.

DECIDED MARCH 11, 1942.

*Deal & Renfroe, Cohen Anderson, W. G. Neville,* for plaintiff in error.

*Fred T. Lanier, solicitor-general,* contra.

MacIntyre, J. The defendant was charged with the murder of his brother-in-law, Tobe Dixon, and was convicted of voluntary manslaughter. He excepted to the overruling of his motion for new trial.

The defendant and Tobe Dixon married sisters, and their wives inherited certain land from their mother who had left the land to them and their three brothers, share and share alike. On the afternoon the defendant killed Dixon defendant's wife had purchased the interest of her brothers and owned four-fifths of the land. Before this the defendant and Dixon had had a few words and the defendant was irritated with Dixon because Dixon and his wife had objected to the defendant cutting timber on the property. Further, Dixon's wife had wanted the home place as her share in

the land, and under order of the court the property was to be sold on the Saturday following the Saturday on which Dixon was killed. The defendant and his wife had objected to the proceedings to sell the home place. On the Saturday the defendant killed Dixon, the defendant had been to town, and late that afternoon the defendant and his son-in-law, Heyward Key, went after some hay in a wagon and, according to his statement to the jury, they passed by Dixon's house in his wagon and Dixon was standing by the gate. The defendant stated that the following occurred: "We had passed a few steps and he taken out after us. He cussed me for a yellow son of a bitch. . . He said 'I have been wanting you and I have got you,' and hollered for the gun. That gun I had, that was mine. I had the gun with me. A man that works as many negroes as I do, thirty-five or forty, needs one. I guess some of you men work a lot of negroes. He run up the road and started into the back end of the wagon. I kicked him with my right leg out of the back of the wagon. He tried it the next time and I kicked him out again—made twice. He was slapping towards the back of the wagon. I didn't have any gun then and I grabbed the edge of the wagon with my right hand. He stabbed and cut me right across the chest right like that [indicating] and it came across my overalls like that. I was lying down in the wagon trying to get away and I throwed my hand up, and when I did he cut me again and I didn't have a thing in the world to do but fight for my life. I started kicking him with my left foot trying to get my gun and finally I got my gun. Gentlemen, when I got hold of my gun he stabbed me right there [indicating] and he had cut me twice there on my leg and twice across there [indicating] and once there [indicating]. When I got out my gun I come out with it, gentlemen, and I am just as sorry I had it to do as I can be. I believe if you had been me you would have done the same. I am sorry." Heyward Key, who was driving the mule and riding in the wagon with the defendant testified that Dixon cursed the defendant and took out after the wagon. He "caught the wagon and hollering for his wife to bring him the gun. . . He tried to get in twice and both times Mr. Pierce [the defendant] kicked him out with his feet and he came around on the side of the wagon and all the time he was cutting at him with a knife. . . As to whether Pierce was doing anything to prevent

it, he was keeping him pushed off with his feet. He shot him three times. He hit him. When he hit him he fell in the road—in the wheel rut."

Taking all the facts of the case and construing them most strongly against the defendant and in favor of the verdict finding him guilty of voluntary manslaughter, the jury was authorized to find that the defendant and Dixon were angry with each other, and that on the occasion of the killing they engaged in an altercation in which both participated and in which the defendant killed Dixon. Thus, "Where one without malice, and not under such circumstances as would justify or excuse the killing, voluntarily kills another, being impelled so to do by that sudden violent impulse of passion supposed to be irresistible, produced by some actual assault upon the person killing or an attempt by the person killed to commit a serious personal injury upon the person killing, or by other equivalent circumstances sufficient to justify the excitement of such passion, then the homicide would be voluntary manslaughter." *Wall* v. *State,* 126 *Ga.* 549 (55 S. E. 484). The evidence in this case discloses such facts as would authorize the jury to conclude that the accused took the life of the deceased under such circumstances as to make him guilty of voluntary manslaughter. The judge did not err in overruling the general grounds of the motion for new trial.

■ The judge charged the jury in part as follows: "A reasonable doubt is just what it purports to be. It is the doubt engendered in the mind of an honest man, after having heard all of the testimony in the case." The defendant contends in special ground 1 that a reasonable doubt may arise from the defendant's statement independent of the evidence in the case, and that this excerpt was erroneous in that it restricted the jury of its right to entertain a reasonable doubt of the defendant's guilt to the evidence. "The jury in all criminal cases are sworn to try the issue, 'and a true verdict give according to the evidence.' Penal Code, § 979. In this State the prisoner is not allowed to testify, but may state, without being sworn, any relevant matters in his own behalf. The jury are allowed to give the prisoner's statement such force as they think it entitled to. When considered in connection with its context, the instruction complained of is only tantamount to a charge that the defendant's guilt must be made to appear

from the evidence. If the jury desired to reject all of the evidence or a part of the evidence because of its conflict with the defendant's statement, they were instructed that they had the power to do this." *Jordan* v. *State,* supra. Where, as here, the judge has fully, fairly, and correctly charged the law with reference to the defendant's statement, the charge excepted to was not erroneous for any reason assigned. *Rouse* v. *State,* 136 *Ga.* 356 (5) (71 S. E. 667); *Harris* v. *State,* 136 *Ga.* 107 (3) (70 S. E. 952).

■ The judge charged the jury in part as follows: "The law you will take from the court and the evidence you will take from the witnesses, and from the defendant's statement, and to the one you apply the other and then make up your verdict in this case." Exception is taken to this in special ground 2 for the reason that it classes the defendant's statement with the evidence in the case, and puts the defendant's statement on the same basis as the sworn testimony, and thereby denies to the jury the freedom of considering the defendant's statement separately from the sworn testimony, and the charge is therefore confusing to the jury and prejudicial to the defendant. In *McTyier* v. *State,* 91 *Ga.* 254 (7), 258 (18 S. E. 140), the defendant excepted to the following portion of the charge: "Now if you find from the evidence in this case, considering in that connection the prisoner's statement," etc., for the reason that it restricted the defendant's statement and left no alternative to the jury but to consider it with the evidence and not otherwise. The court there held: "It was not error as against the accused to instruct the jury to consider the prisoner's statement in connection with the evidence, the instruction as to the statement being otherwise full, complete and correct." Headnote 7. In the instant case the judge had elsewhere charged the jury fully, completely and correctly as to the weight they were authorized to give the defendant's statement to the jury, and when this excerpt is considered in connection therewith no reversible error is disclosed. *Merritt* v. *State,* 152 *Ga.* 405 (4), 406 (110 S. E. 160).

In a criminal case, with reference to the evidence and the defendant's statement, the following charge has been adopted by some of the trial judges: "On the trial of said issue [made by the defendant's plea of not guilty to the charge in the indictment], you [the jury] are the judges of both the law and the facts. The law you will judge from the law as it is given you in charge by the

court; the facts you will judge from the evidence which has been produced to you on this trial, and from the statement which has been made to you on this trial by the defendant; and after you shall have thus judged what is the law and what are the facts, you will apply the law to the facts and find a verdict in accordance therewith."

■ The defendant expressly abandons special ground 3.

■ Grounds 4 and 5 except to a portion of the charge that "you should look to the testimony and determine whether or not the defendant upon trial is guilty of the offense of manslaughter," on the ground that it did not include therein an instruction to consider the defendant's statement and limited the jury to the testimony in the case rather than to the testimony and the defendant's statement, and for the further reason that the judge did not charge fully on the law of manslaughter. The judge elsewhere charged fully and correctly on the defendant's statement and on the law of manslaughter, and when this excerpt is read in connection with the charge as a whole no reversible error appears. See divisions 2 and 3 supra.

■ The judge charged the law of reasonable doubt, and several times charged the jury that if they believed the defendant was not guilty of murder beyond a reasonable doubt they should acquit him of murder, and if they believed him not guilty of manslaughter beyond a reasonable doubt they should acquit him of manslaughter, and also charged that if a reasonable doubt existed in their minds as to whether or not the defendant acted under the fears of a reasonable man they would be authorized to acquit. Special ground 6 excepts to the charge on the form of the verdict, in that the judge failed to charge as to reasonable doubt in connection with each form of verdict the jury could render. Considering the charge as a whole, the jury were sufficiently instructed as to the verdicts they might return, and as to the form of their verdict in the event they had a reasonable doubt of the guilt of the defendant. We therefore do not think that this ground discloses reversible error. *Wheeler* v. *State*, 18 *Ga. App.* 15 (4) (88 S. E. 712); *Stowe* v. *State*, 51 *Ga. App.* 726 (2) (181 S. E. 419).

■ The judge did not err in overruling the motion for new trial for any reason assigned.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*